## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MINNESOTA LAWYERS MUTUAL<br>INSURANCE COMPANY,<br><br>      **Plaintiff,**<br><br>v.<br><br>ROBERT D. LARSON and ALLEN<br>GREELING, individually and<br>as personal representative of the Estate<br>of Jessica Lynn Greeling, deceased,<br><br>      **Defendants.**<br><br>and<br><br>ALLEN GREELING, individually and as<br>personal representative of the Estate of<br>JESSICA LYNN GREELING, deceased,<br><br>      **Counter-Plaintiff,**<br><br>v.<br><br>MINNESOTA LAWYERS MUTUAL<br>INSURANCE COMPANY,<br><br>      **Counter-Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   **CAUSE NO. 06-CV-074-WDS**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **MEMORANDUM & ORDER**

**STIEHL, District Judge:**

Before the Court are several pending motions which the Court will address in turn. Defendant Robert D. Larson has filed a motion to dismiss or stay (Doc. 42), to which plaintiff, Minnesota Lawyers Insurance Company, has filed a response (Doc. 46), and defendant Larson a reply (Doc. 48). Plaintiff has filed a motion for summary judgment (Doc. 45), to which defendant Larson has filed a response (Doc. 49), and defendant Allen Greeling, Individually and as Personal Representative of the Estate of Jessica Lynn Greeling, Deceased, has also filed a

response (Doc. 50), to both of which plaintiff has filed a reply (Doc. 55). Defendant Larson has also filed a cross-motion for summary judgment (Doc. 57), to which plaintiff has filed a response (Doc. 61), and defendant Larson a reply (Doc. 62). Because defendant Larson's cross-motion for summary judgment does not raise any new claims or defenses, the Court will consider it together with his response to plaintiff's motion for summary judgment. Defendant Larson has also filed a motion to strike (Doc. 53) plaintiff's motion for summary judgment, to which plaintiff has filed a response (Doc. 60).

In this declaratory judgment action, plaintiff asks the Court to find that it does not owe a duty to defend or indemnify defendant Larson for any claims made or damages sought in a legal malpractice lawsuit brought by defendant Allen Greeling in Madison County, Illinois, *Greeling v. Larson*, Case No. 2005-L-841.

## I. BACKGROUND

The record reflects the following undisputed events which led to the underlying three count malpractice lawsuit:

1. On July 23, 2001, Greeling hired defendant Larson represent him in his claim for damages resulting from the death of his wife, Jessica Lynn Greeling.

2. On October 11, 2002, defendant, on behalf of Greeling, as personal representative of his deceased wife, filed a five count complaint against Leo Theodoro, M.D., Grace Theodoro, M.D., BJC Health Systems, d/b/a/ Christian Hospital Northeast-Northwest (Christian Hospital), and Erwin S. Plisko, M.D. in Madison County, Illinois Circuit Court.

3. On March 14, 2003, that case was removed from Madison County, Illinois Circuit Court to the United States District Court for the Southern District of Illinois based on diversity jurisdiction, *Greeling v. Theodoro*, No. 03-CV-174-DRH.

4. On October 20, 2003, the Court entered an Order dismissing the medical malpractice lawsuit against Christian Hospital and a separate order dismissing Dr. Plisco without prejudice based on lack of personal jurisdiction. *See,* 03-CV-174-DRH, Docs. 41, 43. Dr. Leo Theodoro was dismissed without prejudice in a separate order for lack of a health care certificate. (Doc. 41).

5. On July 7, 2004, Larson applied for a professional liability insurance policy (original policy) with Minnesota.

6. On August 1, 2004, Minnesota issued the original policy for a term from August 1, 2004 to August 1, 2005.

7. By October 20, 2004, Larson had not re-filed medical malpractice lawsuits against either Christian Hospital or Dr. Pilsco in a court of competent jurisdiction. (Doc. 54-2).

8. By January 7, 2005, the discovery cutoff date in the federal action, Larson had not disclosed his experts or produced them for depositions. (Doc. 54-2).

9. On April 5, 2005, the federal court granted defendant Dr. Grace Theodoro's motion to bar expert testimony on behalf of Greeling at trial. (Doc. 70). The parties remaining in the lawsuit, the plaintiff and Dr. Grace Theodoro were unable to settle the remaining claims.

10. On April 15, 2005, Greeling presented Larson with a letter requesting a copy of his legal file "to possibly have someone else examine the case." (Doc. 45)

11. On April 20, 2005, Larson provided Greeling with a copy of Greeling's file. Defendant also instructed his secretary to make another copy of Greeling's file, noting, "we will probably have to send that to someone or other, like the insurance company." (Deposition of Larson Ex. C, pg. 14).

12. On June 6, 2005, Larson sent Greeling a letter to confirm that: (a) Greeling had

spoken with other lawyers; (b) none of them was interested in taking over the case; and (c) Greeling wanted Larson to go forward with the settlement. Greeling signed a return letter, confirming that he had spoken with other attorneys who were not interested in taking over the case and approving settlement.

13. On July 26, 2005, Larson signed a "warranty page"[1] to renew the original policy (renewal policy). Minnesota issued Larson a renewal policy with a term starting on August 1, 2005 and terminating on August 1, 2006.

14. On September 19, 2005, Greeling filed the underlying lawsuit in Madison County, Illinois, against Larson, his former lawyer, for legal malpractice, claiming negligence for acts, errors, and omissions Larson committed in representing Greeling.

15. On April 10, 2006, Greeling filed an amended complaint against Larson in the state court, action alleging three counts of malpractice. Specifically, Greeling alleged in Counts I and II that Larson failed to re-file lawsuits against Christian Hospital and Dr. Plasco in a court of competent jurisdiction within the applicable time limit following their dismissal from the federal action. (Doc. 54-2). In Count III, Greeling alleged that Larson failed to disclose his expert witnesses and failed to make them available for deposition in federal court by the discovery deadline of January 7, 2005. *Id*.

## II. MOTION TO DISMISS OR STAY

Defendant Larson asks the Court to dismiss this lawsuit without prejudice or, in the alternative, to stay this action until there is a final determination of the underlying lawsuit. Under Illinois law, rendering a decision on a declaratory judgment action is inappropriate where

---

[1] "Warranty Page"
I further certify that I/we are not aware of any claims or circumstances that could result in claims or disciplinary actions that had not been reported to Minnesota Lawyers Mutual Insurance.

the issues in an underlying action and the declaratory action are substantially similar. *Murphy v. Urso*, 430 N.E.2d 1079, 1084 (Ill. 1981). Where the issues in an underlying action and a declaratory judgment action are separable, however, deciding the question of coverage in a collateral proceeding prejudices no party. *Id.* Therefore, the Court must first determine whether the issues presented in this declaratory action are separable from the issues raised in the underlying action.

The issues raised in Defendant Greeling's underlying action against Defendant Larson center on professional malpractice. Specifically, Greeling claims that Larson negligently failed to re-file lawsuits that had been dismissed as to both Christian Hospital and Dr. Plisco (Doc. 8-2, Counts I-II). Greeling also claims that Larson negligently failed to disclose expert witnesses and to make them available for depositions, causing the Court to bar Larson from presenting any expert testimony (*Id.*, Count III). The issues raised in the present declaratory judgment action, in contrast, center on whether Larson possessed knowledge of facts supporting potential malpractice claims against him, including those arising from his representation of Greeling, at the time he obtained insurance coverage from Minnesota Lawyers Mutual Insurance Company.

In the present action, plaintiff has alleged, *inter alia*, that Larson possessed knowledge that his failure to re-file lawsuits against Christian Hospital and Dr. Plisco, and that his failure to disclose and to make available his expert witnesses, could reasonably support claims against him for malpractice liability. The Court must now consider whether Larson knew that his inaction could reasonably support claims. In contrast, the court hearing the underlying state court action must decide whether Greeling's claims alleging Larson's inaction constituted legal negligence causing damages.

Although the issue of whether facts could reasonably support claims and the issue of

5

whether those claims constitute legal negligence causing damages bear some similarity to each other, that similarity is not the "substantial" similarity that the *Urso* court contemplated. *Urso*, 430 N.E.2d at 1084. The *Urso* court reasoned that making a declaratory judgment when the issues in the underlying suit were "substantially the same" would result in application of the collateral estoppel doctrine. *Id.* Such a declaratory judgment would control the underlying suit, thus prejudicing a party to that action. *Id.* Even if this Court decides that Larson possessed knowledge that his inaction could reasonably support claims against him for malpractice liability, such a ruling would have no bearing on the validity of Greeling's claims that Larson's inaction constituted legal negligence causing damage. In other words, this Court's declaration would neither bind the court considering the underlying action nor prejudice a party thereto.

Larson argues that by proving its complaint, plaintiff would be proving that "Larson was aware of something that was true, actual and done and which substantiates Greeling's claim against him." (Doc. 43). Larson contends that the phrases "reasonably support" and "reasonably substantiate" possess the same meaning. Black's Law Dictionary defines "substantiate" as "[t]o establish the existence or truth of (a fact, etc.), esp. by competent evidence; to verify." BLACKS LAW DICTIONARY 1470 (7th ed. 1999), and it defines "support," as stating "3. Basis or foundation." *Id.* at 1481. The plain meaning of these definitions indicates that "substantiate" carries a stronger connotation than "support." In other words, Larson would need more facts to actually "substantiate" a claim than he would simply to "support" one. The Court concludes that the "reasonably support" language in the policy imposed a more burdensome reporting duty upon Larson than the one that would have been imposed if the policy had required him to report facts that could "reasonably substantiate" a claim.

The Court **FINDS** that the issues to be decided in the current declaratory judgment

6

motion are separable from the issues to be decided in the underlying lawsuit. Accordingly, the Court **DISMISSES** plaintiff's motion to dismiss or to stay.

### III. MOTION TO STRIKE

Defendant Larson asks the Court to strike plaintiff's motion for summary judgment. (Doc. 45). Larson argues that plaintiff's motion for summary judgment asks the court to declare that plaintiff does not owe a duty to defend or indemnify Larson with respect to Greeling's original, underlying complaint. Larson explains that Greeling's underlying complaint ceased being a part of the record when Greeling filed his amended complaint in the underlying lawsuit because the amended complaint did not adopt or incorporate the original complaint. From this, Larson concludes that plaintiff is asking the court to rule on a moot controversy.

Larson's argument fails. Both plaintiff's complaint and plaintiff's summary judgment motion ask this court to declare that plaintiff does not owe a duty to defend or indemnify Larson with respect to Greeling's underlying lawsuit, not merely Greeling's underlying, original complaint. Plaintiff is simply asking that this court declare its rights with respect to a lawsuit against its insured, not with respect to any specific claim or complaint filed therein. Accordingly, the Court **DENIES** defendant Larson's motion to strike plaintiff's motion for summary judgment.

### IV. MOTION FOR SUMMARY JUDGMENT

A district court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c): *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). The moving party

initially bears the burden to demonstrate an absence of genuine issues of material fact, indicating that judgment should be granted as a matter of law. *See, Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 294 (7th Cir. 1999) (citing *Celotex*, 477 U.S. at 323). Once a motion for summary judgment has been made and properly supported, however, the nonmovant has the burden of setting forth specific facts showing the existence of a genuine issue for trial. *See, id.* In determining whether a genuine issue of material fact exists, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable and justifiable inferences in that party's favor. *See, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In ruling on a motion for summary judgment, the Court will not resolve factual disputes, weigh conflicting evidence, or make credibility determinations. *See, Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001); *Miranda v. Wis. Power & Light Co.*, 91 F.3d 1011, 1014 (7th Cir. 1996).

## A. <u>Applicability of the Claims-Made Provision</u>

The parties dispute whether the insurance policy language dealing with "claims-made" would preclude Larson from claiming the right to compel plaintiff to defend him in the underlying state court action. Neither party disputes that Greeling's underlying lawsuit against Larson, filed on September 9, 2005, satisfies the second definition of a "CLAIM(S)" (claim provision).[2]

The undisputed facts also establish that Greeling's lawsuit falls within the purview of the "COVERAGE" provision (coverage provision).[3] For example, Greeling's lawsuit against

---

[2] "CLAIM(S)" means:
(1) A demand communicated to the INSURED for DAMAGES or PROFESSIONAL SERVICES;
(2) A lawsuit served upon the INSURED and seeking DAMAGES; or
(3) An act, error, or omission by any INSURED which has not resulted in a demand for DAMAGES but which an INSURED knows or reasonably should know, would support such a demand.

[3] COVERAGE
WE will pay all sums up to the limit of OUR liability, which the INSURED may be legally obligated to pay as DAMAGES due to any CLAIM:
(1) arising out of any act, error or omission of the INSURED or a person for whose acts the INSURED is legally responsible; and

8

Larson addressed, *inter alia*, Larson's failure to re-file lawsuits against the dismissed defendants in state court, conduct which occurred between June 1, 1969, the "retroactive date" of the renewal policy, and August 1, 2006, its termination date.

However, both parties dispute the effect of the second sentence of the "CLAIMS MADE PROVISIONS" (claims-made provision) of the policy.[4]

**1. Interpreting the Policy Language**

Before addressing the parties' arguments, the Court notes that under Illinois law summary judgment is an appropriate remedy where only the construction and legal effect of an insurance policy are at issue. *Perkins & Will v. Security Ins. Co.*, 579 N.E.2d 1122, 1125 (Ill. App. Ct. 1991). Whether an ambiguity exists is a question of law for the trial court to determine. *Cent. Ill. Pub. Serv. Co. v. Am. Empire Surplus Lines Ins. Co.*, 642 N.E.2d 723, 726 (Ill. App. Ct. 1994). A policy term is not ambiguous simply because parties can suggest creative possibilities for its meaning. *Smith v. Neumann*, 682 N.E.2d 1245, 1250 (Ill. App. Ct. 1997). The alternate interpretation must also be reasonable. *Id*. at 1251.

Larson asserts that Greeling's underlying lawsuit satisfies the claim provision as well as the coverage provision of the renewal policy, which would, he argues, require plaintiff to defend

---

      (2)  resulting from the rendering or failing to render PROFESSIONAL SERVICES while engaged in the private practice of law.
A CLAIM is covered only if first made and reported to US during the POLICY PERIOD and the CLAIM results from a wrongful act, error or omission which occurred on or after the retroactive date shown on the prior acts endorsement attached to this policy. A CLAIM is deemed first made and reported on the date an INSURED first reports an incident or demand to US or OUR agent.

[4]CLAIMS-MADE PROVISIONS
This policy affords coverage for CLAIMS first reported to US during the POLICY PERIOD or extended reporting period, if the act, error or omission occurred during the POLICY PERIOD. *This policy also covers CLAIMS resulting from any act, error or omission which occurred prior to the POLICY PERIOD and on or after the PRIOR ACTS RETROACTIVE DATE if the INSURED had no knowledge of facts which could reasonably support a CLAIM at the effective date of this policy.* (Emphasis added).

and to indemnify Larson under the policy. Although plaintiff does not dispute that Greeling's underlying lawsuit satisfies those two provisions of the renewal policy, plaintiff argues that satisfying those provisions is necessary, but not alone sufficient, to require defense and indemnification under the renewal policy. Plaintiff argues that Larson must also satisfy the claims-made provision before perfecting a claim for defense and indemnification.

In support of his interpretation of the renewal policy, Larson challenges its organization and language. First, Larson explains that the claims-made provisions and the coverage provisions are separate provisions. (Doc. 49) Second, Larson argues that the policy does not clearly state that the claims-made provisions actually "modify, supersede, negate, limit or trump" the coverage provisions. *Id.* Finally, Larson contends that the claims-made provisions are drafted in such a way as to "describe additional circumstances under which the policy will provide coverage." *Id.* To support his interpretation of how the contractual language should apply, Larson focuses specifically on the second sentence of the claims-made provision, which states, "[t]his policy *also* covers CLAIMS . . . ." (emphasis added). Larson asserts that the policy should have been worded differently if the insurer intended the claims-made provision to exempt coverage for insureds who had knowledge of facts which could reasonably support a claim.

To support this position, Larson relies on *Perkins & Will v. Security Ins. Co. Of Hartford*, 579 N.E.2d 1122 (Ill. App. Ct. 1991), wherein the insurance policy applied:

> to "claims made" during the policy period if: a) the claim arises during the policy period; *or* b) the error, omission, or negligent act giving rise to the claim took place prior to the policy period but after the retroactive date specified in the declarations if applicable, provided that: 1) you had no knowledge of the claim prior to the beginning of this policy; and 2) you had no knowledge of any situation that resulted in the claim; and 3) there is no valid insurance for the claim.

*Id.* at 1124 (emphasis added).   The *Perkins* court refused to rewrite Section a) of that policy to

use the word "and" instead of "or." *Id*. at 1126. The insurer in *Perkins* conceded that its interpretation of the policy section could be reached only by replacing the word "or" following section a) with the word "and." *Id*. The court refused to make such a substitution, reasoning that "Illinois courts do not treat the words 'and' and 'or' as interchangeable when their accurate and literal meaning does not render the meaning of the policy dubious." *Id*.

The undisputed facts and the policy in this case, however, are different from those in *Perkins*.. Unlike the insurer in *Perkins*, the plaintiff in this case has not asked the court to rewrite or replace words in the insurance policy to reach its interpretation of the policy. The plaintiff's interpretation here simply relies on the plain meaning of the words and provisions in the policy.

Plaintiff asserts that Larson, in addition to satisfying the claims and coverage provisions, must also satisfy the claims-made provision before perfecting his claims for defense and indemnification. To support this argument, the plaintiff relies on the rule that a court must interpret the policy as a whole. *Metalex Corp. v. Uniden Corp. of Am.*, 863 F.2d 1331, 1334 (7th Cir. 1988). The plaintiff also relies on *Outboard Marine*, which states that "[a] Court must strive to give each term in the policy meaning unless doing so would render the clause or policy inconsistent or inherently contradictory." *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1219 (Ill. 1992). Finally, the plaintiff argues that the Court should not reject provisions of the policy as without meaning or mere surplusage, if possible. *Sindelar v. Liberty Mut. Ins. Co.*, 161 F. 2d 712, 717-18 (7th Cir. 1947).

Plaintiff argues that Larson is asking the court to interpret the claims-made provision so as to "ignore, excise, or completely delete" it from the policy. (Doc. 55). In other words, plaintiff argues that Larson's interpretation requires the court to treat the claims made provision

as a "mere surplusage." *Id*. Larson, on the other hand, argues that the insurance policy provisions create an ambiguity which must be read against the insurer. *Nat'l Discount Shoes, Inc. v. Royal Globe Ins. Co.*, 424 N.E.2d 1166, 1171 (Ill. App. Ct. 1981).

### 2. Applying the Policy Language

While Larson has creatively parsed the language in the policy to generate an interpretation favoring coverage, the Court **FINDS** that this interpretation is not a reasonable one. First, adopting Larson's interpretation of the policy would render the second sentence of the claims-made provision a mere surplusage. Second, unlike the insurer in *Perkins*, the plaintiff in this case is not asking the Court to rewrite or replace any words in the contract, it is simply asking the Court to interpret the plain meaning of the language in the policy. The Court can adopt plaintiff's interpretation of the claims-made provision without rendering a "clause or policy inconsistent or inherently contradictory." *Outboard Marine*, 607 N.E.2d at 1219.

The plain language of the claims-made provision clearly modifies the coverage provision. The coverage provision explains the necessary conditions for eligibility for defense and indemnification under the policy (i.e., both the claim and the occurrence upon which the claim is based must occur between the retroactive period and the end of the policy period). The first sentence[5] of the claims-made provision explains the conditions to be satisfied for defense and indemnification of claims based on malpractice occurring during the policy period. Sentence two[6] explains the conditions to be satisfied for defense and indemnification of claims based on malpractice occurring before the policy period, but after the retroactive period.

---

[5] "This policy affords coverage for CLAIMS first reported to US during the POLICY PERIOD or extended reporting period, if the act, error or omission occurred during the POLICY PERIOD."

[6] "This policy also covers CLAIMS resulting from any act, error or omission which occurred prior to the POLICY PERIOD and on or after the PRIOR ACTS RETROACTIVE DATE if the INSURED had no knowledge of facts which could reasonably support a CLAIM at the effective date of this policy."

Therefore, the Court **FINDS** that Larson's interpretation of the insurance policy is unreasonable and that sentence two of the claims-made provision applies to Greeling's underlying claim against Larson.

**B. <u>Satisfaction of the Claims-Made Provision</u>**

Because the Court has found that the second sentence of the claims-made provision applies to Greeling's underlying claim against Larson, the Court must now determine whether plaintiff has established that Larson knew of "facts that could reasonably support a claim" against Larson for malpractice liability as part of that underlying state action.

    **1. <u>Legal Issue: Objective v. Subjective Knowledge Standard</u>**

Larson argues that the language in the claims-made provision requires plaintiff to show that Larson knew of an *actual* claim against him rather than just a potential claim. Larson bases his argument on Illinois precedent that interpreted a claims-made provision using a subjective standard. *Gibraltar Cas. Co. v. A. Esptein and Sons, Int'l., Inc.,* 562 N.E.2d 1039, 1040 (Ill. App. Ct. 1990), (holding that the defendant's insurance policy defined "claims-made" to mean that the insured was covered "for claims of which the insured had no prior knowledge . . . .") The Illinois Appellate Court determined that the claims-made provision required the plaintiff to show that the defendant possessed actual knowledge of a claim against himself, not just a reasonable expectation of a claim, before denying coverage under the claims-made provision. *Id.* at 1044.

Here, plaintiff argues an objective standard applies to the claims-made provision in this case. In *Neumann*, the Illinois Appellate Court interpreted a claims-made provision using an objective standard. 682 N.E.2d at 1254-55. Prior to *Neumann*, the Illinois Appellate Court had adopted the objective standard only in a case involving a material misrepresentation made by an

13

applicant for insurance. *Ratcliffe v. Int'l Surplus Lines Ins. Co.*, 550 N.E.2d 1052, 1058 (Ill. App. Ct. 1990). The *Neumann* court considered a "claims-made" provision providing coverage for claims that the insured "did not have a basis to believe that the act, error, or omission or Personal Injury was a breach of professional duty or may result in a claim . . . ." *Neumann*, 682 N.E.2d at 1248. Relying on *Ratcliffe* and adopting the objective standard, the *Neumann* court concluded that the facts alleged gave the defendant a "basis to believe" that the defendant's acts, errors, or omissions could have resulted in a claim. *Id*. at 1253-54. In contrast to *Gibraltar*, the appellate court in *Neumann* determined that the policy language required only an objective showing of defendant's knowledge that his acts constituted malpractice or may result in a claim against him for malpractice. *Id*. at 1255.

The differing approaches that the Illinois Appellate Court took in *Gibraltar* and in *Neumann* are consistent with the rule that in construing insurance contracts, the courts should give words in the policy their plain and ordinary meaning, and a court should not search for ambiguity when none exists. *Stiefel v. Ill. Union Ins. Co.*, 452 N.E.2d 73, 75 (Ill. App. Ct. 1983). Therefore, the plain meaning of the words in the claims-made provision in the policy in question will dictate whether the court applies an objective or subjective standard to this provision.

### 2. Application of Legal Standards to the Policy

The plain language in the policy at issue requires applying the subjective knowledge standard. The second sentence of the claims-made provision denies coverage if the insured "*knew of facts* which could reasonably support a CLAIM . . . ." (Emphasis added). For example, that sentence does not read, "*knew [or should have known] of facts* . . ." or otherwise indicate that an objective standard should apply. In *Neumann,* the policy at issue covered claims that the

14

insured "did not have a *basis to believe*" would arise. 682 N.E.2d at 1248 (emphasis added). In *Gibraltar*, the policy at issue covered claims of which the "insured had no prior *knowledge*." 562 N.E.2d 1040 (emphasis added). In the present case, the policy requires that the insured possess actual knowledge, not simply some "basis to believe." In other words, the language in the policy at issue is more like the policy language in *Gibraltar* than the policy language in *Neumann*. Therefore, the Court **FINDS** that the claims-made provision requires that defendant Larson possess subjective knowledge.

Although applying the subjective knowledge standard to the policy language at issue favors Larson, doing so does not afford him as much protection as he seeks. Unlike the claims-made provision in *Gibraltar*, the provision at issue does not condition coverage upon a showing that the defendant possessed knowledge of an *actual claim* against him. *Gibraltar*, 562 N.E.2d at 1044. Rather than requiring the insured to have actual knowledge of a specific claim, the policy language at issue only requires that the insured knew of facts which could reasonably support a claim. That "knowing of a claim" and "knowing of facts which could reasonably support a claim" are different standards requires no further explanation.

Accordingly, the Court **FINDS** that the claims-made provision requires plaintiff to show that Larson actually knew of facts which could support claim against him for malpractice liability, but does not require there to have been an actual claim filed against Larson.

### 3. **Factual Issue: Did Larson Subjectively Know of Facts Which Could Reasonably Support a Claim Against Him?**

The plaintiff has demonstrated that Larson knew "facts which could reasonably support a CLAIM" against him for malpractice liability. First, plaintiff established that Greeling began questioning Larson's handling of his case following the April 5, 2005 settlement conference.

(Doc. 45).  Greeling expressed to Larson his disappointment about being offered only $15,000 to settle his case at that time. *Id*.  On April 15, Greeling presented a letter to Larson requesting a copy of Greeling's legal file to "possibly have someone else examine the case." *Id*.  Indeed, Larson confirmed his knowledge of these facts when he directed his secretary to prepare a copy of Greeling's legal file for Greeling, and an additional copy of the file because he anticipated having to send it "to someone or other, like the insurance company." *Id*. Larson also sent a letter to Greeling on May 11, 2005, in which Larson acknowledged that there was a problem with the attorney-client relationship between Greeling and Larson. (Doc. 49).  Therefore, the record supports a finding that Larson knew of "fact[s] which could reasonably support a CLAIM" of malpractice liability against him.

      Larson defends on the grounds that, despite consulting with other lawyers, Greeling ultimately decided to maintain his attorney-client relationship with Larson and to accept the $15,000 settlement offer.  Greeling confirmed these facts in a signed letter.  Larson argues that these occurrences gave him "no reason to think Greeling was going to pursue any type of legal malpractice claim against him."  Larson's belief that his attorney-client relationship with Greeling changed course following the settlement agreement does not negate Larson's knowledge that Greeling was, at least at one time, dissatisfied with Larson's performance and with the settlement offer.  Larson knew that Greeling could file suit after the settlement agreement; that Greeling never threatened to do so, or that Larson assumed Greeling would not do so, is irrelevant.   Therefore, Larson knew of "facts which could reasonably support a CLAIM" against him and has failed to demonstrate a genuine factual issue for trial.

      Second, the undisputed facts show that Larson knew that two defendants, Christian Hospital and Dr. Plisco, were dismissed without prejudice from Greeling's federal action.

Larson also knew that he did not re-file lawsuits against them in state court while he could, facts which "could reasonably support a CLAIM" against Larson for malpractice liability. For example, Larson concedes that he notified Greeling on October 20, 2003, that the defendants, in his case, Christian Hospital and Dr. Plisco, had been dismissed from the federal action. (Doc. 49). In addition, the undisputed facts show that Larson knew he could no longer re-file lawsuits against the dismissed defendants in state court. (Doc. 45) (citing Larson's Answer to Request to Admit No. 16, 17, 18, 24, 25, Ex. B).

In defense, Larson claims that he could not have further represented Greeling following the dismissal order in federal court.[7] Larson's attempt, or apparent lack thereof, to represent his client does not negate Larson's knowledge that the dismissal order and his failure to re-file lawsuits against the dismissed defendants "could reasonably support a CLAIM" against him for malpractice liability. Therefore, Larson has failed to demonstrate a genuine factual issue for trial.

Third, the undisputed facts establish that Larson knew that he failed to disclose experts or produce experts for depositions prior to the discovery cutoff date, facts which "could reasonably support a CLAIM" against Larson for malpractice liability. Larson has not alleged any facts to suggest he was not aware of these occurrences. Therefore, Larson has failed to demonstrate a genuine factual issue for trial.

## CONCLUSION

---

[7] While Larson is correct in stating that the federal courts prevent interlocutory appeals regarding dismissals, federal courts do not prevent litigants from seeking reconsideration of a dismissal order. Furthermore, Larson could have attempted to re-file the lawsuits against the dismissed defendants in state court. The Court reads Chapter 735 Section 13-217 of the Illinois Compiled Statutes (the savings statute) to apply:
> ". . . if . . .the action is dismissed by a United States District Court for lack of jurisdiction . . .the plaintiff, his or her heirs, executors or administrators may commence a new action within one year or within the remaining period of limitation, whichever is greater, after such judgment is . . . dismissed by a United States District Court for lack of jurisdiction."

Whether the saving statute actually applies is likely a matter to be determined in the underlying suit. At any rate, however successful Larson would have been in pursuing any of these remedies is irrelevant to the present issue.

Accordingly, the Court **DENIES** defendant Larson's motion to dismiss or stay (Doc. 42) on all grounds.  Defendant Larson's motion to strike (Doc. 53) is also **DENIED** on all grounds.

Plaintiff's motion for summary judgment (Doc. 45) is **GRANTED**. Judgment is entered in favor of plaintiff, Minnesota Lawyers Mutual Insurance Company, and against defendant, Robert D. Larson, and defendant Allen Greeling, individually and as Personal Representative of the Estate of Jessica Lynn Greeling, deceased, on plaintiff's complaint for declaratory judgment. The Court also **FINDS** that the plaintiff has no duty to defend or indemnify Robert D. Larson in the action *Greeling v. Larson*, No. 2005-L-841, Madison County, Illinois.  The Court **DENIES** defendant Larson's cross motion for summary judgment (Doc. 57) on all grounds.  Each party shall bear its own costs.

In light of the Court's ruling on plaintiff's motion for summary judgment, the Court **DISMISSES** with prejudice defendant Greeling's counterclaim (Doc. 8).

The Clerk of the Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

DATED:   September 11, 2007.


                                                  **s/ WILLIAM D. STIEHL**
                                                        **DISTRICT JUDGE**